IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| MARJORIE A. CREAMER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 16-4045-SAC |
| | ) | |
| GENERAL MOTORS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| MARJORIE A. CREAMER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 16-4046-DDC |
| | ) | |
| STORTZ AUCTION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| MARJORIE A. CREAMER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 16-4047-SAC |
| | ) | |
| TOPEKA POLICE DEPARTMENT, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| MARJORIE A. CREAMER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 16-4052-DDC |
| | ) | |
| BRIAN M. JACQUES, | ) | |
| | ) | |
| Defendant. | ) | |

# ORDER GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS and REPORT AND RECOMMENDATION

This order relates to the four above-styled lawsuits recently filed by pro se plaintiff Marjorie A. Creamer.  In each lawsuit, plaintiff has moved to proceed in forma pauperis.  As discussed below, the undersigned U.S. Magistrate Judge, James P. O'Hara, recommends that, although plaintiff is granted leave to proceed in forma pauperis, her four actions be dismissed under the screening requirement of 28 U.S.C. § 1915(e)(2).

I.      Motions to Proceed In Forma Pauperis

Plaintiff has moved to proceed in forma pauperis in all four of her most recent lawsuits.[1]  Section 1915 of Title 28 of the United States Code allows the court to authorize the commencement of a civil action "without the prepayment of fees or security therefor, by a person who submits an affidavit [asserting] . . . the person is unable to pay such fees or give security therefor."[2]  To succeed on a motion to proceed in forma pauperis, the movant must show a financial inability to pay the required filing fees.[3]  The decision to grant or deny in-forma-pauperis status under § 1915 lies within the "wide discretion" of the trial court.[4]  Based on the information contained in the affidavits accompanying plaintiff's motions, plaintiff has shown a financial inability to pay the required filing fees.  Plaintiff is unemployed and claims monthly income, mostly in the form of disability payments, in the amount of $861.00.  Plaintiff claims expenses

---

[1] To date, plaintiff has filed more than twenty lawsuits in the District of Kansas.
[2] 28 U.S.C. § 1915(a)(1).
[3] *United States v Garcia*, 164 Fed. App'x 785, 786 n.1 (10th Cir. Jan. 26, 2006).
[4] *Id.*

exceeding her monthly income.  The court therefore grants plaintiff leave to proceed without prepayment of the filing fee pursuant to § 1915(a)(1).

II.     Screening under 28 U.S.C. § 1915(e)(2)

When a party is granted leave to proceed in forma pauperis, § 1915(e)(2) requires the court to screen the party's complaint.  The court must dismiss the case if the court determines that the action (1) is frivolous or malicious, (2) fails to state a claim upon which relief may be granted, or (3) seeks monetary relief from a defendant who is immune from suit.[5]  The purpose of § 1915(e)(2) is to "discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11."[6]  The screening procedure set out in § 1915(e)(2) applies to all litigants, prisoners and non-prisoners alike.[7]

In applying § 1915(e)(2) to the pleadings of a pro se litigant, the court must liberally construe the pleadings and hold them to a less stringent standard than formal pleadings drafted by attorneys.[8]  This does not mean, however, that the court must become an advocate for the pro se plaintiff.[9]  "To state a claim, the plaintiff must provide

---

[5] 28 U.S.C. §1915(e)(2)(B).
[6] *Trujillo v. Williams*, 465 F.3d 1210, 1216 (10th Cir. 2006) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)).
[7] *See Lister v. Dep't of Treasury*, 408 F.3d 1309, 1312 (10th Cir. 2005).
[8] *Johnson v. Johnson*, 466 F.3d 1213, 1214 (10th Cir. 2006).
[9] *Lyons v. Kyner*, 367 F. App'x 878, 881 (10th Cir. 2010).

'enough facts to state a claim to relief that is plausible on its face.'"[10] The "court need not accept allegations that state only legal conclusions."[11] Dismissal is appropriate when "it is obvious that the plaintiff cannot prevail on the facts [s]he has alleged and it would be futile to give [her] an opportunity to amend."[12]

> A. *Creamer v. General Motors, et al.*
>    Case No. 16-4045

Case No. 16-4045 is related to a case plaintiff previously filed—Case No. 11-4028 (*General Motors I*). In *General Motors I*, plaintiff asserted a product liability action against General Motors Corporation, in which she alleged a defect in her 2006 Chevrolet Cobalt caused an automobile accident on September 24, 2009.[13] Specially, plaintiff alleged: "Recall of defective steering motor of March 2010, steering defect caused accident in 2009 Sept. 24th, further more airbag failed to deploy."[14] On July 15, 2011, U.S. District Judge Carlos Murguia dismissed without prejudice plaintiff's complaint,[15] holding she could not maintain an action because of the automatic stay the bankruptcy court imposed when General Motors filed for bankruptcy in 2009.[16] Plaintiff failed to timely appeal *General Motors I*, so the Tenth Circuit dismissed plaintiff's appeal for lack

---

[10] *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[11] *Peoples v. Langley/Empire Candle Co.*, No. 11-2469, 2012 WL 171340, at *2 (D. Kan. Jan. 20, 2012) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

[12] *Phillips v. Layden*, No. 11-7011, 2011 WL 4867548, at *1 (10th Cir. Oct. 14, 2011) (internal quotation and citation omitted).

[13] *General Motors I*, ECF doc. 1.

[14] *Id.* at 3.

[15] *General Motors I*, ECF doc 13.

[16] On June 1, 2009, General Motors filed for bankruptcy under Chapter 11 of the Bankruptcy Code in the Southern District of New York.

of jurisdiction.[17]

In Case No. 16-4045, plaintiff attempts to re-assert a product liability action against General Motors arising out of the same 2009 car accident (*General Motors II*). In *General Motors II*, plaintiff alleges her Chevrolet Cobalt "caused accident 2009 due to recall ignition switch, faulty non-airbag, and defective recalled steering motor."[18] Thus, the only "new" allegation in *General Motors II* is plaintiff's inclusion of the ignition switch as being allegedly defective, with plaintiff indicating in parenthesis "2014 recall."[19] Liberally construing plaintiff's complaint, the court assumes plaintiff is attempting to allege that, pursuant to a 2014 recall of the ignition switch, plaintiff became aware of the alleged defect that may have caused the 2009 car accident. However, it appears that, using the vehicle identification number provided by plaintiff in her complaint,[20] a recall for the ignition switch on plaintiff's Chevrolet Cobalt occurred on February 7, 2014,[21] more than two years before she filed *General Motors II*.

The Kansas Product Liability Act, K.S.A. § 60–3302(c), applies to all legal theories of product liability—"negligence, breach of express or implied warranty, and breach of or failure to discharge a duty to warn or instruct"—and merges them into one single product liability claim subject to the two-year statute of limitations in K.S.A. § 60–513. *Pedro v. Armour Swift-Eckrich*, 118 F. Supp.2d 1155, 1158–59 (D. Kan. 2000) (quoting *Fennesy v. LBI Mgmt., Inc.*, 18 Kan. App.2d 61, 65–66, 847 P.2d 1350, 1355

---

[17] *General Motors I*, ECF doc. 28.
[18] *General Motors II*, ECF doc. 1 at 3.
[19] *General Motors II*, ECF doc. 1 at 4.
[20] *Id.*

(1993)).  In this case, the car accident occurred in 2009, yet plaintiff did not file the instant complaint until April 25, 2016—well beyond the applicable two-year statute of limitations.  Moreover, to the extent plaintiff claims that the ignition switch in part caused the 2009 accident or that she was not aware that the ignition switch was defective until the 2014 recall, that claim also may be time-barred if the recall was issued before April 25, 2014.  If and to the extent plaintiff files an objection to the instant report and recommendation, plaintiff must show the court that the ignition switch recall was issued after April 25, 2014, to save her product liability claim against General Motors.  If plaintiff fails to adequately establish that General Motors issued the recall after April 25, 2014, the undersigned recommends dismissal of Case No. 16-4045.

      B.    *Creamer v. Stortz Auction, et al.*
            Case No. 16-4046

Case No. 16-4046 is related to two cases plaintiff previously filed—Case No. 15-4853 and Case No. 16-2104.  In Case No. 15-4853, plaintiff alleged that Stortz Auction engaged in improper activities in the sale of certain items at an estate auction of the estate of Howard Leroy Ellis (*Stortz I*).  In *Stortz I*, plaintiff asserted a claim of fraud, a claim under the Racketeer Influenced and Corrupt Organizations Act, and civil rights violations.[22]  U.S. Magistrate Judge K. Gary Sebelius examined plaintiff's complaint and ordered plaintiff to show cause why her case should not be dismissed for failure to state a claim,[23] to which plaintiff responded.[24]  U.S. District Judge Richard D. Rogers considered

---

[21] https://my.gm.com/recalls?vin=1G1AL55F367780039.
[22] *Stortz I*, ECF doc. 1.
[23] *Stortz I*, ECF doc. 4.

both plaintiff's complaint and her response to the show cause order and dismissed *Stortz I* for failure to state a claim.[25]

After Judge Rogers dismissed *Stortz I*, plaintiff filed Case No. 16-2104 (*Stortz II*).[26] In *Stortz II*, plaintiff named David Stortz d/b/a Stortz Auction and "Nancy (wife)," again complaining about Mr. Ellis's estate auction and alleging fraud.[27] U.S. Magistrate Judge Gerald L. Rushfelt ordered plaintiff to show cause why the case should not be dismissed for lack of subject matter jurisdiction and failure to state a claim.[28] After plaintiff responded, Judge Murguia dismissed *Stortz II* for lack of subject matter jurisdiction.[29] Specifically, he held that (1) diversity jurisdiction was lacking because both plaintiff and defendants are residents of the State of Kansas and (2) plaintiff's allegations that her civil rights were violated "per ADA violation" did not confer federal question jurisdiction.[30]

Three days after Judge Murguia dismissed *Stortz II* for lack of subject matter jurisdiction, plaintiff filed Case No. 16-4046 (*Stortz III*). In *Stortz III*, plaintiff names Stortz Auction, David Stortz, and Nancy Stortz as defendants and alleges "fraud by Stortz Auction [that] deprived plaintiff of housing, property and ADA right of Housing."[31]

---

[24] *Stortz I*, ECF doc. 5.
[25] *Stortz I*, ECF doc. 6.
[26] *Stortz II*, ECF doc. 1.
[27] *Id.* at 2–3.
[28] *Stortz II*, ECF doc. 5 at 2 and 4.
[29] *Stortz II*, ECF doc. 8.
[30] *Id.* at 2–3.
[31] *Stortz III*, ECF doc. 1 at 3.

Plaintiff states in her complaint that she is a citizen of Kansas and Missouri[32] and that defendants are citizens of Kansas. Plaintiff also identifies April 5, 2014, as the date of the auction, which is consistent with the auction date she alleged in her two previous lawsuits.

The undersigned recommends *Stortz III* be dismissed for at least two reasons. First, while plaintiff has now pleaded an "ADA right of Housing," *arguably* conferring federal question jurisdiction,[33] plaintiff has failed to state a claim upon which relief may be granted. Plaintiff's complaint fails to allege any conduct on the part of defendants—other than that the April 2, 2014, auction was "held in fraud by Stortz Auction."[34] Plaintiff fails to assert with any specificity the fraudulent conduct in which these defendants allegedly engaged or for which the defendants could be liable, rendering it impossible for defendants to frame an answer.[35] Moreover, the American with Disabilities Act has no plausible application to plaintiff's claim that defendants committed fraud in conducting an estate auction, especially given that plaintiff alleges no facts from which this court could infer that plaintiff is a qualified individual under the ADA.

Second, plaintiff's claims are time-barred, thereby rendering any attempts to

---

[32] Plaintiff indicated on her Civil Cover Sheet that her "mail" address is a post office box in Kansas City, Missouri, and that her "home" address is in Smith Center, Kansas. *Stortz III*, ECF doc. 2.

[33] The court presumes plaintiff is referring to the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*

[34] *Stortz III*, ECF doc. 1 at 3.

[35] *Collier-Kinnell v. United States*, No. 10-4140, 2010 WL 4807075, at *2 (D. Kan. Nov. 17, 2010) (dismissing case under 28 U.S.C. § 1915(e)).

amend the complaint as futile. Claims for fraud and claims brought under the ADA must be brought within two years.[36] The auction about which plaintiff complains occurred on April 5, 2014—more than two years before plaintiff filed the instant action on April 25, 2016.

Moreover, plaintiff's claims are not saved by the Kansas savings statute, which provides: "*If any action be commenced* within due time, and the plaintiff fail in such action otherwise than upon the merits, and the time limited for the same shall have expired, the plaintiff . . . may commence a new action within six (6) months after such failure."[37] Accordingly, plaintiff must have "commenced" *Stortz II* to take advantage of the savings statute. Under K.S.A. § 60–203(a), "[a] civil action is commenced at the time of: (1) Filing a petition with the court, if service of process is obtained . . . within 90 days after the petition is filed. . . ." Here, plaintiff did not "commence" *Stortz II* because she never obtained service of process on the defendants.[38] Moreover, plaintiff's filing of *Stortz II* was void *ab initio* given the district court's determination that subject matter

---

[36] K.S.A. § 60-513(a)(3) (fraud); *Smith v. Kansas Dep't of Corr.*, 455 F. App'x 841, 845 (10th Cir. 2011) (two-year statute of limitations applied to ADA claim).

[37] K.S.A. § 60–518 (emphasis added).

[38] *See Johnson v. Fisher*, 497 F. App'x 822, 825 (10th Cir. 2012) (holding that savings statute did not apply where plaintiff did not serve process in the first action). The undersigned notes that Judge Rushfelt directed in his order to show cause that the U.S. Marshals Service withhold service until further order of the court. *Stortz II*, ECF doc. 5 at 4. However, Judge Rushfelt specifically identified that subject matter jurisdiction was lacking. (*Id.* at 2). Because Judge Rushfelt withheld service based upon his concern that subject matter was lacking, the court concludes that *Stortz II* was never appropriately commenced within the meaning of the savings statute. *Johnson*, 497 F. App'x at 826 (where subject matter jurisdiction is raised, court's dismissal of case before summons issued did not impact court's conclusion that action had not "commenced" for purposes of triggering savings statute).

jurisdiction was lacking.[39]  As such, plaintiff's filing of *Stortz II* cannot provide a basis upon which to invoke the savings statute.  Accordingly, because plaintiff brings this case more than two years after the auction, and because her claims are not saved by K.S.A. § 60–518, plaintiff's claims are time-barred.  The undersigned recommends Case No. 16-4046 be dismissed.

        C.      *Creamer v. Topeka Police Department, et al.*
                 Case No. 16-4047

Case No. 16-4047 is related to a case plaintiff previously filed against the Topeka Police Department—Case No. 16-2195 (*Topeka Police Department I*).  In *Topeka Police Department I*, plaintiff named the City of Topeka (and others) in a complaint alleging wrongful conduct on the part of Topeka police.[40]  The complaint made little sense and included "vague, rambling" assertions from which it was be impossible for defendants to frame an answer."[41]  For those reasons, the undersigned recommended dismissal of *Topeka Police Department I*.[42]

Despite the express direction to plaintiff that she must state objections to the report and recommendation within 14 days after service,[43] plaintiff failed to make any objection.

---

[39] *See Christopher v. State ex rel. Kan. Juvenile Justice Auth.*, 36 Kan. App.2d 697, 704, 143 P.3d 685, 691 (2006) (holding that plaintiff's first case, which was dismissed for lack of jurisdiction, was void *ab initio*, rendering the savings statute inapplicable) (citing *Zinke & Trumbo, Ltd. v. Kansas Corp. Comm'n*, 242 Kan. 470, 490, 749 P.2d 21 (1988)).
[40] *Topeka Police Department I*, ECF doc. 1.
[41] *Topeka Police Department I*, ECF doc. 6.
[42] *Topeka Police Department I*, ECF doc. 6.
[43] Specifically, the report and recommendation stated: "Plaintiff must file any objections within the 14-day period allowed if she wants to have appellate review of the proposed findings of fact, conclusions of law, or the recommended disposition.  If no

As a result, U.S. District Judge Daniel D. Crabtree adopted the report and recommendation on April 21, 2016, and dismissed *Topeka Police Department I*.[44]  Three days later, plaintiff filed Case No. 16-4047 (*Topeka Police Department II*).

In *Topeka Police Department II*, plaintiff names the Topeka Police Department, along with "all officers on [June 23, 2015]"; "Det. Riggins on Sept 4, 2015 March"; and the Hope Center "Rosie Lopez employee."[45]  In her statement of claim, plaintiff alleges that the Topeka Police Department was "out of order by arresting Creamer when no probable cause and then using excessive force."[46]  Plaintiff identifies June 23, 2015, and September 3, 2015, in her complaint—the same dates she identified in *Topeka Police Department I*.

Plaintiff's filing of *Topeka Police Department II* clearly is an attempt to circumvent the rules and procedures of this court.  Plaintiff's complaint in *Topeka Police Department II* includes the same conduct she alleged in *Topeka Police Department I*—albeit more artfully pleaded.  However, when the undersigned recommended dismissal of *Topeka Police Department I*, plaintiff's only course of action to save these claims was to file an objection to the report and recommendation,[47] which plaintiff failed to do.  Indeed, plaintiff had a full and fair opportunity to object to the undersigned's recommendation to dismiss her claims against the Topeka Police Department, yet she chose to file nothing.

---

objections are timely filed, no appellate review will be allowed by any court."  ECF doc. 6 at 5.

[44] *Topeka Police Department I*, ECF doc. 8.
[45] *Topeka Police Department II*, ECF doc. 1 at 2.
[46] *Id.*
[47] Fed. R. Civ. P. 72(b); D. Kan. Rule 72.1.4(b).

Rather, plaintiff waited until Judge Crabtree dismissed *Topeka Police Department I*, and then three days later filed *Topeka Police Department II*. Having failed to utilize the only mechanism available to save her excessive force claims in *Topeka Police Department I*, the undersigned recommends dismissal of Case No. 16-4047.

    D.    *Creamer v. Brian M. Jacques*
          Case No. 16-4052

Plaintiff filed Case No. 16-4047 against Brian M. Jacques, indicating in her complaint that Jacques is employed at the Sloan Law Firm.[48] Plaintiff claims "Legal Malpractice" and "Breach of Duty," setting forth ten allegations (presumably) relating to Jacques's legal representation of plaintiff in handling the estate of Howard Leroy Ellis.[49]

Federal courts are courts of limited jurisdiction. For this court to have jurisdiction over a case, the complaint must raise a federal question or satisfy the requirements of diversity jurisdiction. Here, plaintiff states that both she and Jacques are citizens of the State of Kansas. Because there is no diversity of citizenship, there can be no diversity jurisdiction under 28 U.S.C. § 1332.[50]

The undersigned also concludes there is no federal question jurisdiction. While plaintiff includes a citation to "42 U.S. Code § 120101,"[51] the ADA has no plausible application to plaintiff's claim that defendant committed legal malpractice in

---

[48] ECF doc. 1 at 2.
[49] Id. at 3–7.
[50] *Symes v. Harris*, 472 F.3d 754, 758 (10th Cir. 2006) ("Under 28 U.S.C. § 1332, a party must show that complete diversity of citizenship exists between the adverse parties and that the amount in controversy exceeds $75,000.") (citation omitted). Plaintiff also fails to allege in her complaint the amount in controversy.
[51] ECF doc. 1 at 3.

administering Mr. Ellis's estate or otherwise representing plaintiff. Rather, absent diversity of citizenship and an amount in controversy over $75,000—which do not exist here—plaintiff's state law claims of legal malpractice, assuming of course they have any merit, belong in state court. The undersigned recommends dismissal of Case No. 16-4052.

III. <u>Objections</u>

Plaintiff is hereby informed that, within 14 days after she is served with a copy of this report and recommendation, she may, pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72, file written objections to the report and recommendation. Plaintiff must file any objections within the 14-day period allowed if she wants to have appellate review of the proposed findings of fact, conclusions of law, or the recommended disposition, by filing her objections in <u>each</u> case she wishes to pursue. If no objections are timely filed, no appellate review will be allowed by any court.

The Clerk is directed to send a copy of this report and recommendation to plaintiff by regular and certified mail.

IT IS SO ORDERED.

Dated May 18, 2016, at Kansas City, Kansas.

 s/ James P. O'Hara  
James P. O'Hara  
U.S. Magistrate Judge